**Phyllis D. ASHLEY, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 91–386.**

United States Court of Veterans Appeals.

Dec. 2, 1993.

As Amended Dec. 29, 1993.

Roberta L. Valente, Ruth E. Eisenberg, and Gershon M. Ratner, National Veterans Legal Services Project, Washington, DC, were on the briefs, for appellant.

James A. Endicott, Jr., Gen. Counsel, Norman G. Cooper, Acting Asst. Gen. Counsel, Andrew J. Mullen, Deputy Asst. Gen. Counsel, and Angela Foehl, Washington, DC, were on the brief, for appellee.

Before NEBEKER, Chief Judge, and IVERS and STEINBERG, Judges.

IVERS, Judge:

Phyllis D. Ashley, the widow of veteran David Lee Ashley, appeals an October 24, 1990, decision of the Board of Veterans' Appeals (BVA or Board) which denied her claim for burial benefits and dependency and indemnity compensation benefits (DIC), on the ground that the veteran's death was not caused by service-connected post-traumatic stress disorder (PTSD). *Phyllis D. Ashley*, BVA 90–35610 (Oct. 24, 1990). Counsel for appellant filed a brief and a reply brief urging remand. The Secretary filed a brief urging affirmance. The Court has jurisdiction over the case pursuant to 38 U.S.C.A. § 7252(a) (West 1991). For the reasons set forth below, the Court vacates the decision of the BVA and remands the case for readjudication consistent with this opinion.

## I. Background

The veteran served in the United States Army from July 13, 1965, to July 12, 1968. R. at 1, 55. His induction examination was negative for any medical or psychological defects. R. at 2–8. During his service, the veteran served a ten-month tour of duty in the Republic of Vietnam. R. at 56; *see* R. at 107. The record contains evidence from which it can reasonably be concluded that the veteran experienced disturbing events during that tour of duty. First, he accidently ran over a Vietnamese civilian while driving a gasoline truck. R. at 213. Second, he saw a friend killed on a street in Saigon. R. at 203. Third, he was exposed to enemy fire while working on a utility pole. R. at 213–14. Finally, the veteran and his older brother, Frank Ashley, were both on duty simultaneously in Vietnam. R. at 89. Because of this, Frank Ashley was given permission by the Marine Corps to return stateside. Frank Ashley gave his younger brother, David Ashley, the veteran here, the opportunity to come home. Four hours after David Ash-

ley's departure from Saigon, on September 28, 1967, his brother was killed in action. R. at 83, 92–93.

A review of the records for 1967 from the Joint Services Environmental Support Group (JSESG) indicates that the veteran served in a signal company whose mission was, among others, to "provide direct and general maintenance support to all supported units; provide over-flow direct support maintenance that is beyond the capacity of supported division maintenance battalions, non-di-visional [sic] units and other direct support battalions in the Saigon/Cholon/Tan Son Nhut area." R. at 238. In July 1967, two members of the company were injured when a "terrorist threw a homemade grenade at them in Cholon. Both received the Purple Heart." R. at 240. In August 1967, the company came under sniper fire, and one member was killed in action. R. at 240.

The veteran's service medical records (SMRs) indicate that on February 14, 1968, he was seen in a U.S. Army Hospital (name and place are illegible) for "nervousness and tremors." R. at 24. He was prescribed Librium (no amount noted). R. at 24. Librium is prescribed for the relief of anxiety. PHYSICIANS' DESK REFERENCE 2020 (1993) [hereinafter PDR]. On February 23, 1968, he reported to the Troop Dispensary at Fort Eustis, Virginia, for the same problem. R. at 24. The prescription was changed from Librium to Thorazine 25 mg. TID [three times a day]. Thorazine is a psychotropic drug used for the manifestations of psychotic disorders. PDR at 2327. Psychotropic means capable of modifying mental activity. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1386 (1988). He was honorably discharged in July 1968. R. at 1.

On October 28, 1987, the veteran was admitted to Portsmouth Psychiatric Center (PPC) for alcohol dependence after his daughter attempted suicide, claiming that she was unable to deal with the veteran's drinking and dependence. R. at 126–29. The PPC nursing admission assessment form stated the reason for hospitalization as "alcohol and the war." R. at 130. On November 16, 1987, he was discharged because of lack

of insurance coverage and prescribed Antabuse, 250 mg. every evening. R. at 122–25. Antabuse is a drug used to stop people from drinking while they are being treated for alcoholism. ROBERT O'BRIEN & SIDNEY COHEN, THE ENCYCLOPEDIA OF DRUG ABUSE 29 (1984). Preparatory to the early discharge, a social worker noted "unresolved conflicts over Vietnam war experience." R. at 152.

On February 28, 1988, the veteran was shot and killed during a domestic dispute with his spouse, appellant here, Phyllis D. Ashley. R. at 63–64. Phyllis Ashley was arrested and charged with murder and use of a firearm during a felony. R. at 64. The police report indicates that the veteran was under the influence of alcohol, and had a .38 caliber revolver on his waist. R. at 66–68. The wife grabbed the revolver and shot the veteran in the back after he stabbed her in the hand with a knife. R. at 66–69, 82. On March 23, 1988, appellant filed, on behalf of herself and her two children, David Ashley and Carrie Ashley, an APPLICATION FOR DEPENDENCY AND INDEMNITY COMPENSATION OR DEATH PENSION BY SURVIVING SPOUSE OR CHILD, claiming that the veteran's death was service connected as a result of PTSD. R. at 73, 77. On July 25, 1988, a grand jury refused to indict Phyllis Ashley on the charges. R. at 101. On January 10, 1989, a Department of Veterans Affairs (VA) Regional Office (RO) Administrative Decision held that the widow did not wrongfully cause the veteran's death, and thus was not precluded by 38 C.F.R. § 3.11 from receiving DIC benefits. R. at 102.

In support of her DIC application, appellant submitted letters from herself, the veteran's parents, her children, and friends that the veteran was an alcoholic, that he carried knives and guns, and that he threatened to use them when he was upset. R. at 84–91, 199. A letter from Willie Ashley, the veteran's father, stated that his son had not been the same since he returned from Vietnam. He indicated:

He had threatened to kill his children, his wife and me many times. He has even held a 38 pistol to my neck for more than ten minutes. He drank and wasted a lot of his pay check. I paid for most of the things he wanted when he didn't have the money to get them. He was violent if I didn't have the money to get them. He was violent if I didn't give him the things he asked for.

David never acted like himself after he came home from the war. Something happened to his mind and he couldn't get the war off his mind.

R. at 83. On May 2, 1989, the RO denied service-connected disability and held:

We, therefore, see no connection between the vet's behavior after service which led to his demise and his active military service. Furthermore, there is absolutely no evidence to establish the existence of PTSD. There is no evidence confirming his actual involvement in a life threatening situation while in service.

R. at 107. On October 12, 1989, appellant filed a Notice of Disagreement, and the RO issued a Statement of the Case. R. at 111–12.

On November 30, 1989, appellant appealed to the BVA, claiming that, although the veteran was not definitively diagnosed with PTSD, his traumas, survival guilt, and alcoholism were all manifestations of PTSD. R. at 117. In support of her appeal, appellant submitted additional evidence consisting of a report from Dr. David Grady, a psychologist who served as a participating researcher and contributor on the congressionally mandated National Vietnam Veterans Readjustment Study. R. at 195. Dr. Grady's additional credentials consisted of eight years of experience as a VA-certified Veterans Service Officer and seven years as a member of the VA's Advisory Committee on the Readjustment Problems of Vietnam Veterans. *Id.* Dr. Grady stated that in his expert opinion the veteran had been suffering from PTSD as defined by the Diagnostic and Statistical Manual of Mental Disorders (DSM–III–R), and that his alcohol dependence was a manifestation of his PTSD. R. at 195–97. Dr. Grady based his opinion on his evaluation of the veteran's military records, post-service treatment records, and personal statements from family and friends. R. at 195. In a decision dated October 24, 1990, the Board denied service connection for the cause of the

veteran's death, stating that symptoms characteristic of PTSD were not noted in the clinical record, and that the facts did not warrant an independent medical expert evaluation or Chief Medical Director opinion in the case. *Ashley*, BVA 90–35610, at 5. A timely appeal to this Court followed.

## II. Analysis

Determinations regarding whether a particular disability was incurred in or aggravated by service and the degree of impairment for purposes of rating such a disability are findings of fact. *Stegman v. Derwinski*, 3 Vet.App. 228, 229–30 (1992); *Harrison v. Principi*, 3 Vet.App. 532, 533 (1992); *Lovelace v. Derwinski*, 1 Vet.App. 73, 74 (1990); *Gilbert v. Derwinski*, 1 Vet.App. 49, 52–53 (1990). Factual findings of the BVA will not be overturned by this Court unless they fail to meet the "clearly erroneous" standard of review. *Gilbert*, 1 Vet.App. at 52–53. Under this standard, "if there is a 'plausible' basis in the record for the factual determinations of the BVA, even if this Court might not have reached the same factual determinations, [the Court] cannot overturn them." *Id.* at 53.

Pursuant to 38 U.S.C.A. § 7104(d)(1) (West 1991), a final decision of the Board must include "a written statement of the Board's findings and conclusions, and the reasons or bases for those findings and conclusions, on all material issues of fact and law presented on the record...." This Court has held that the BVA must "articulate with reasonable clarity its 'reasons or bases' for decisions, and in order to facilitate effective judicial review, the Board must identify those findings it deems crucial to its decision and account for the evidence which it finds to be persuasive or unpersuasive." *Gilbert*, 1 Vet.App. at 57. Where the Board fails to fulfill this duty, the Court may be precluded from effectively reviewing the adjudication. *Meeks v. Brown*, 5 Vet.App. 284, 288 (1993); *Browder v. Brown*, 5 Vet.App. 268, 272 (1993). For the reasons set forth below, the Court holds that the BVA did not provide adequate "reasons or bases" for its conclusions, in light of all the evidence presented relevant to appellant's claim.

The Board in this case did not address evidence of possible stressors in service or provide reasons or bases for its conclusion that the veteran did not experience stressors while in the service or for its apparent determination that the veteran's evidence was inadequate evidence of stressors. In particular, the Board did not mention JSESG records indicating that he may have seen combat with guerillas, been exposed to sniper fire, and participated in guarding his compound from the enemy. R. at 238–41. The Board should also have discussed the relevance of evidence that two men from the veteran's company had received Purple Hearts, and that one member of the company was killed by enemy fire, evidence which, on its face, would constitute evidence of the occurrence of stressful episodes. Department of Veterans Affairs Adjudication Procedure Manual (M21–1), Part VI, para. 7.46e.

Here, the BVA decision failed to include an analysis of the March 27, 1989, hearing testimony, including a discussion of the credibility and the probative value of the testimony of the veteran's father, and of appellant regarding the veteran's behavior after returning from Vietnam. R. at 220. A claimant's sworn testimony is evidence which the Board must consider, and the Board must "provide adequate reasons or bases for its rejection of the appellant's testimonial evidence." *Pruitt v. Derwinski*, 2 Vet.App. 83, 85 (1992). The VA's statutory "duty to assist" the veteran under 38 U.S.C.A. § 5107(a) to develop the facts pertinent to his claim must extend the liberal reading given to a veteran's substantive appeal "to include issues raised in all documents or oral testimony submitted prior to the BVA decision." *EF v. Derwinski*, 1 Vet.App. 324, 326 (1991); *see Suttmann v. Brown*, 5 Vet.App. 127, 132 (1993). In addition, the BVA decision did not provide reasons or bases for rejecting supporting documents from friends and family. *Ashley*, BVA 90–35610, at 4–5.

According to 38 U.S.C.A. § 1154(b) (West 1991), the Board is required to consider lay evidence of service connection or aggravation. The section indicates:

> In the case of any veteran who engaged in combat with the enemy in active service

with a military, naval, or air organization of the United States during a period of war, campaign, or expedition, the Secretary *shall accept as sufficient proof of service-connection* of any disease or injury alleged to have been incurred in or aggravated by such service *satisfactory lay or other evidence of service incurrence or aggravation* of such injury or disease, if consistent with the circumstances, conditions, or hardships of such service, notwithstanding the fact that there is no official record of such incurrence or aggravation in such service....

*Id.* (Emphasis added). Section 3.304(d) reiterates that satisfactory lay evidence alone will be accepted as sufficient proof of service connection:

*Combat.* Satisfactory *lay or other evidence* that an injury or disease was incurred or aggravated in combat will be accepted as sufficient proof of service connection if the evidence is consistent with the circumstances, conditions or hardships of such service even though there is no official record of such incurrence or aggravation.

38 C.F.R. § 3.304(d) (1993) (emphasis added).

In a case similar to the case at bar, *Sheets v. Derwinski*, 2 Vet.App. 512 (1992), where a World War II veteran committed suicide and his wife filed a claim for service connection for her husband's death, contending that the suicide was the result of PTSD, this Court held that under 38 U.S.C.A. § 1154(b), the fact that lay evidence is unsupported by clinical records does not allow the conclusion that the lay evidence is therefore uncorroborated and necessarily an insufficient justification for service connection. *Sheets* also held that the widow's claim and the evidence in support of her position that the veteran's suicide resulted from allegedly service-incurred PTSD required consideration of the benefit-of-the-doubt doctrine, especially where the BVA cited no evidence or facts by which to impeach or contradict Mrs. Sheets' claim. *Sheets*, 2 Vet.App. at 514, 517. This case also held that the BVA failed in its duty to assist the veteran's widow in developing the facts pertinent to her claim. *Id.*

In support of the Board's decision, the Secretary argues that, because appellant's SMRs do not reveal a diagnosis of PTSD during service, because clinical records establish alcohol dependence rather than PTSD, and because the cause of death of the veteran was a bullet wound, service connection is unwarranted. Secretary's Brief at 14–15. On the other hand, appellant contends that the veteran's death was service connected; she argues that the veteran died from a gunshot wound due to his violence and that, but for his experiences in Vietnam, he would not have been so violent. She further contends that PTSD was his primary illness and that his alcohol abuse was an attempt to self-medicate his service-incurred PTSD. As support for these contentions, appellant points to the testimony of her father-in-law, the supporting documentation from friends and family, and the opinion of Dr. Grady. R. at 77–92, 195–98. Appellant also contends that the Secretary has neither solicited nor produced an opinion contrary to Dr. Grady's diagnosis that the veteran's alcohol abuse is secondary to his PTSD. *Ashley*, BVA 90–35610, at 1–6.

 In order to establish service connection for the cause of a veteran's death, the evidence must show that a disability incurred in or aggravated by service was either the principal cause of death or a contributory cause of death. 38 C.F.R. § 3.312(a) (1993). A service-connected disability will be considered to be the principal cause of death when it, either singly or jointly with some other condition, was the immediate or underlying cause of death or was etiologically related to the cause of death. 38 C.F.R. § 3.312(b) (1993). In defining what constitutes a "contributory cause of death," VA regulations provide:

Contributory cause of death is inherently one not related to the principal cause. In determining whether the service-connected disability contributed to death, it must be shown that it contributed substantially or materially; that it combined to cause death; that it aided or lent assistance to the production of death. It is not sufficient to show that it casually shared in

producing death, but rather it must be shown that there was a causal connection. 38 C.F.R. § 3.312(c)(1) (1993).

 The Board erred by employing its own unsubstantiated medical opinion to answer whether alcohol dependence resulting from PTSD may have been the "primary or contributory" cause of the veteran's death. In *Colvin v. Derwinski*, 1 Vet.App. 171 (1991), we held that the Board may not substitute its own medical judgment for independent medical evidence. *See also Cosman v. Principi*, 3 Vet.App. 503, 506 (1992); *Hatlestad v. Derwinski*, 3 Vet.App. 213, 217 (1992) (*Hatlestad II* ); *Budnik v. Derwinski*, 3 Vet. App. 185, 187 (1992); *Quarles v. Derwinski*, 3 Vet.App. 129, 139 (1992); *Tobin v. Derwinski*, 2 Vet.App. 34, 39 (1991). While the Board is not required to accept the medical authority supporting a claim, it must provide its reasons for rejecting such evidence and, more importantly, must provide a medical basis other than its own unsubstantiated conclusions to support its ultimate decision. *Colvin*, 1 Vet.App. at 175; *see also Simon v. Derwinski*, 2 Vet.App. 621, 622 (1992); *Hatlestad v. Derwinski*, 1 Vet.App. 164, 169 (1991) (*Hatlestad I* ) *Gilbert*, 1 Vet.App. at 57; *Murphy v. Derwinski*, 1 Vet.App. 78, 81 (1990). The BVA is obliged under 38 U.S.C.A. § 5107(a) to assist claimants in developing the facts pertinent to their claims. Under this provision, a claimant bears the initial burden of submitting evidence "sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." 38 U.S.C.A. § 5107(a) (West 1991). "A well[-]grounded claim is a plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden" required by the statute. *Sheets*, 2 Vet.App. at 517; *Moore v. Derwinski*, 1 Vet.App. 401, 405 (1991); *Murphy*, 1 Vet.App. at 81. Here, the Court holds that appellant, by means of Dr. Grady's opinion and citations to medical treatises, has provided competent medical evidence, i.e., evidence which may justify a belief in a fair and impartial individual that the claim is "plausible" or "possible," to meet the threshold well-grounded-claim requirement with respect to her claim for service connection for the cause

of the veteran's death. Moreover, in its discussion, the BVA stated that "[s]everal symptoms, such as mood swings, flat affect, restlessness, night sweats, anxiety and tremors have been highlighted, but they are consistent with the diagnosis of alcohol dependence and are not specific to *only* PTSD." *Ashley*, BVA 90–35610, at 5 (emphasis added).

In *Sheets*, the Court held that the issues presented an appropriate case in which to seek an advisory medical opinion as to the relationship between the "veteran's combat experience, his behavior, and his death on the one hand, and the causes and symptoms associated with PTSD on the other." *Sheets*, 2 Vet.App. at 517. Here, as in *Sheets*, "such action would be a viable way for the BVA to fulfill its duty to assist the appellant." *Id.; see* 38 U.S.C.A. § 5107(a).

Nevertheless, in the instant case the Board concluded:

A private psychologist opined in August 1990 that the veteran was suffering from PTSD at the time of his death. His opinion is based, in part, on statements from relatives and friends of the veteran, who described a noticeable change in the veteran's personality when he returned from Vietnam, his problems with drinking, uncontrollable temper, guilt over surviving his brother, startle response to sudden loud noises, flashbacks, nightmares and social isolation.... However, the only clinical evidence recorded while the veteran was alive, records from a private psychiatric center from late 1987, do not demonstrate PTSD. The final diagnosis then was alcohol dependence. The private psychologist stated in August 1990 that it was not unusual for the veteran, while undergoing treatment for alcoholism, not to identify problems with PTSD, but the symptoms characteristic of PTSD were not noted in clinical records, even though the veteran was a patient for three weeks. Several symptoms, such as mood swings, flat affect, restlessness, night sweats, anxiety and tremors have been highlighted, but they are consistent with the diagnosis of alcohol dependence and are not specific to

only PTSD. Although the reason for hospitalization was stated as "alcohol and the war," and "unresolved conflicts over Vietnam war experience" was noted in progress notes, the constellation of symptoms characteristic of PTSD was not clinically demonstrated. Additionally, there was no relationship shown between his psychiatric symptoms and specific stressors experienced during his Vietnam service.

*Ashley,* BVA 90–35610, at 4–5. Having said that, the Board, in its effort to contradict Dr. Grady's opinion that the veteran suffered symptoms of PTSD, does not point to any evidence in the record that appellant's alcoholism could not be diagnostic of, or secondary to, PTSD or could not have stemmed from PTSD. This Court has held:

> Even where there is a lack of official records to corroborate that an injury or disease was incurred or aggravated during service (including a period of combat), the [Secretary] is required to accept as sufficient proof of service connection satisfactory lay or other evidence that an injury or disease was incurred or aggravated during such period of service, if the evidence is consistent with the circumstances, conditions, or hardships of such service.

*Hayes v. Brown,* 5 Vet.App. 60, 66 (1993); 38 U.S.C.A. § 1154(b); 38 C.F.R. § 3.304(d). It is not the function of this Court to speculate on the relationship between any service-connected disabilities a veteran may have and his or her cause of death; rather, it is the function of this Court to decide whether the Board's factual determinations on the issue constitute clear error. *See Shoemaker v. Derwinski,* 3 Vet.App. 248, 254 (1992); *Gilbert,* 1 Vet.App. at 53.

 This Court has held that the failure of the BVA in certain cases to consider the benefit-of-the-doubt doctrine and set forth clearly its reasons for not applying it constitutes error. *Sheets,* 2 Vet.App. at 516; *see O'Hare v. Derwinski,* 1 Vet.App. 365, 367 (1991). The doctrine requires that where there "is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each issue shall be given to the claimant."

38 U.S.C.A. § 5107(b) (West 1991). The BVA decision, in stating that the veteran's symptoms "are not specific to only PTSD," indicates that the evidence may be in equipoise, and that the appellant may be entitled to the benefit of the doubt. In *Williams v. Brown,* 4 Vet.App. 270, 273–74 (1993), the Court held that "where there is significant evidence in support of an appellant's claim, as there is here, the Board must provide a satisfactory explanation as to why the evidence was not in equipoise."

### III. Conclusion

Accordingly, upon consideration of the record, appellant's brief, and the Secretary's brief, the Court holds that the decision of the BVA is VACATED, and the case is REMANDED for readjudication consistent with this opinion.