Citation Nr: 1719097 
Decision Date: 05/31/17 Archive Date: 06/06/17

DOCKET NO. 14-15 773A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Atlanta, Georgia


THE ISSUES

1. Whether new and material evidence has been received to reopen a previously denied claim of entitlement to service connection for left iliac chondrosarcoma, and if so whether service connection is warranted. 

2. Entitlement to service connection for prostate cancer, claimed as due to exposure to contaminated water at Camp Lejeune.


REPRESENTATION

Appellant represented by: Douglas Sullivan, Attorney-at-Law


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

M. Thomas, Associate Counsel


INTRODUCTION

The Veteran, who is the appellant in this case, served on active duty from August 1976 to May 1978.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an August 2013 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Louisville, Kentucky, which, in pertinent part, denied entitlement to service connection for bone cancer and prostate cancer, and reopened and denied the Veteran's claim of entitlement to service connection for chondrosarcoma. Regardless of any RO determination on the application to reopen, however, the Board has a jurisdictional responsibility to consider whether it is proper for the claim to be reopened. See Jackson v. Principi, 265 F.3d 1366, 1369 (Fed. Cir. 2001). Jurisdiction has since been transferred to the VA RO in Atlanta, Georgia.

The Veteran testified at a January 2016 Board videoconference hearing before a Veterans Law Judge (VLJ). A copy of the hearing transcript is associated with the claims file. Unfortunately, the VLJ who conducted the hearing is no longer employed at the Board. The Veteran has not been afforded the opportunity to have a new Board hearing with a new VLJ prior to this decision. However, this is a harmless error in light of the awards of service connection for both chondrosarcoma and prostate cancer provided in this decision.

After reviewing the contentions and evidence of record, the Board finds that the service connection claims for bone cancer and chondrosarcoma are appropriately merged into one claim as reflected on the title page of this decision. The Board notes that the United States Court of Appeals for Veterans Claims (Court) has held that when a claimant makes a claim, he is seeking service connection for symptoms regardless of how those symptoms are diagnosed or labeled. See Brokowski v. Shinseki, 23 Vet. App. 79 (2009) (holding that a claimant may satisfy the requirement to identify the benefit sought by referring to a body part or system that is disabled or by describing symptoms of the disability); see also Clemons v. Shinseki, 23 Vet. App. 1, 5 (2009) (holding that the scope of a mental health disability claim includes any mental disorder that may reasonably be encompassed by the claimant's description of the claim, reported symptoms, and other information of record). In this regard, while the Veteran and VA have treated the claims for bone cancer and chondrosarcoma as separate claims, the Board finds that, based on the medical evidence, these terms describe the same diagnosed condition and they are not separate and distinct conditions. See September 2016 VA medical opinion, October 2014 treating physician opinion, July 2013 VA examination report, and VA treatment records. Therefore, in consideration of the holdings in Brokowski and Clemons, the Board recharacterized the claim as reflected on the title page.

FINDINGS OF FACT

1. In a March 2009 decision, the VA denied the Veteran's claim for entitlement to service connection for chondrosarcoma. The Veteran was notified later that month and neither appealed this decision nor submitted new and material evidence within the one year appeal period.

2. Evidence received since the March 2009 decision relates to the basis for the prior denial and raises a reasonable possibility of substantiating the claim of service connection for chondrosarcoma.

3. The Veteran was stationed at Camp Lejeune for at least 30 days during his active military service and is presumed to have been exposed to contaminants in the water supply therein.

4. Resolving any doubt in favor of the Veteran, his currently diagnosed bone cancer is etiologically related to the presumed exposure to contaminants in the water supply while stationed at Camp Lejeune.

5. Resolving any doubt in favor of the Veteran, his currently diagnosed prostate cancer is etiologically related to the presumed exposure to contaminants in the water supply while stationed at Camp Lejeune.


CONCLUSIONS OF LAW

1. The March 2009 rating decision that denied the claim for entitlement to service connection for chondrosarcoma is final. See 38 U.S.C.A. § 7103, 7104 (West 2014); 38 C.F.R. §§ 3.156, 20.1100 (2016).

2. Evidence received since the March 2009 rating decision is new and material and the claim for entitlement to service connection for chondrosarcoma is reopened. 38 U.S.C.A. § 5108 (West 2014); 38 C.F.R. § 3.156(a) (2016).

3. Resolving all reasonable doubt in the Veteran's favor, the criteria for service connection for bone cancer have been met. 38 U.S.C.A. §§ 1131, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307(a) (7) (2016).

4. Resolving all reasonable doubt in the Veteran's favor, the criteria for service connection for prostate cancer have been met. 38 U.S.C.A. §§ 1131, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307(a) (7) (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations imposes obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.326(a). Given the favorable outcome of this decision, no prejudice to the Veteran could result from this decision. See Bernard v. Brown, 4 Vet. App. 384, 394 (1993).

Reopening Based on New and Material Evidence

Rating decisions are final and binding based on evidence on file at the time the claimant is notified of the decision and may not be revised on the same factual basis except by a duly constituted appellate authority. 38 C.F.R. § 3.104 (a). The claimant has one year from notification of a RO decision to initiate an appeal by filing a notice of disagreement with the decision, and the decision becomes final if an appeal is not perfected within the allowed time period. 38 U.S.C.A. §7105; 38 C.F.R. §§ 3.160, 20.201, 20.302 (2016). 

In this case, service connection for chondrosarcoma was denied by a March 2009 rating decision. Notice was provided and the decision was not appealed. It thus became final. See 38 U.S.C.A. § 7103, 7104; 38 C.F.R. §§ 20.1100. The same factual basis is not generally thereafter considered.

An exception to this rule is 38 U.S.C.A. § 5108, which provides that if new and material evidence is presented or secured with respect to a claim which has been disallowed, VA shall reopen the claim and review the former disposition of the claim. The implementing regulation also provides that new and material evidence received prior to the expiration of the appeal period will be considered as having been filed in connection with the claim that was pending at the beginning of the appeal period. 38 C.F.R. § 3.156(b). If such new and material evidence had been submitted and had not been acted upon, a claim could still be pending until a decision had been made on that evidence. See 38 C.F.R. § 3.160(c)("pending claim" is "[a]n application, formal or informal, which has not been finally adjudicated"); see also Ingram v. Nicholson, 21 Vet. App. 232, 240 (2007) ("[A] claim remains pending-even for years-if the Secretary fails to act on a claim before him"). To comply with the directive of 38 C.F.R. § 3.156(b) that new and material evidence be treated as having been filed in connection with the pending claim, VA must evaluate submissions received during the relevant period and determine whether they contain new evidence relevant to a pending claim, regardless of whether the relevant submission might otherwise support a new claim. Bond v. Shinseki, 659 F.3d 1362, 1369 (Fed. Cir. 2011).

Under applicable regulations, new evidence is defined as existing evidence not previously submitted to agency decision makers. Material evidence means evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence previously of record, and must raise a reasonable possibility of substantiating the claim. 
38 C.F.R. § 3.156(a).

In determining whether evidence is new and material, the credibility of the evidence is generally presumed. Justus v. Principi, 3 Vet. App. 510, 512-513 (1992). The United States Court of Appeals for the Federal Circuit (Federal Circuit) has held, however, that evidence that is merely cumulative of other evidence in the record cannot be new and material even if that evidence had not been previously presented to the Board. Anglin v. West, 203 F.3d 1343 (2000).

In deciding whether new and material evidence has been submitted, the Board looks to the evidence submitted since the last final denial of the claim on any basis. Evans v. Brown, 9 Vet. App. 273, 285 (1996). The threshold for determining whether new and material evidence raises a reasonable possibility of substantiating a claim is "low." See Shade v. Shinseki, 24 Vet. App. 110, 117 (2010).

In order to determine whether new and material evidence has been received, the Board must analyze the law applicable to the underlying service connection claim. Service connection will be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred in or aggravated by active military service. 38 U.S.C.A. § 1131; 38 C.F.R. § 3.303(a). Establishing service connection generally requires competent evidence of three things: (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship, i.e., a nexus, between the claimed in-service disease or injury and the current disability. Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2009); 38 C.F.R. § 3.303(a).

As noted above, in March 2009, VA denied the Veteran's claim for entitlement to service connection for pelvis chondrosarcoma. The Veteran was notified of this denial in a letter that month, but did not appeal the decision. Therefore, this denial was final. See 38 U.S.C.A. § 7103, 7104; 38 C.F.R. §§ 3.156, 20.1100.

The RO's denial in March 2009 of service connection for chondrosarcoma was based on a determination that there was no nexus between the Veteran's chondrosarcoma and service, including any exposure to chemicals in the water at Camp Lejeune. The evidence before the RO included the Veteran's service treatment records, lay statements, and a letter dated August 2008 from the Department of the Navy regarding the creation of a registry of individuals who resided or worked at Camp Lejeune between 1957 and 1987.

The evidence received since the March 2009 rating decision includes an October 2014 medical opinion from the Veteran's treating physician, VA treatment records, lay statements, military personnel records, and a July 2013 VA examination. The October 2014 medical opinion from the Veteran's treating VA physician, Dr. S.C., indicated that the Veteran's current chondrosarcoma and prostate cancer were related to or caused by exposure to chemicals in the water at Camp Lejeune. As this evidence relates to the basis of the prior denial, it is new and material, and reopening of the claim for service connection for chondrosarcoma is warranted.


Service Connection - Laws and Regulations

As indicated above, service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by active military, naval, or air service. 38 U.S.C.A. § 1131; 38 C.F.R. § 3.303(a). Service connection may also be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease incurred in service. 38 C.F.R. 
§ 3.303(d). 

Effective March 14, 2017, VA amended 38 C.F.R. §§ 3.307 and 3.309 to allow presumptive service connection for certain enumerated diseases related to exposure to contaminated drinking water at Camp Lejeune. Under the new regulations, a veteran, or former reservist or member of the National Guard, who had no less than 30 days (consecutive or nonconsecutive) of service at Camp Lejeune during the period beginning on August 1, 1953, and ending on December 31, 1987, shall be presumed to have been exposed during such service to the contaminants in the water supply, unless there is affirmative evidence to establish that the individual was not exposed to contaminants in the water supply during that service. 38 C.F.R. § 3.307 (a)(7) (2016)(amended March 14, 2017). If a veteran, or former reservist or member of the National Guard, was exposed to contaminants in the water supply at Camp Lejeune during military service and the exposure meets the requirements of 38 C.F.R. § 3.307(a)(7), the following diseases will be service-connected even though there is no record of such disease during service, subject to the rebuttable presumption provisions of § 3.307(d): 1) kidney cancer; 2) liver cancer; 3) Non-Hodgkin's lymphoma; 4) adult leukemia; 5) multiple myeloma; 6) Parkinson's disease; 7) aplastic anemia and other myelodysplastic syndromes; and 8) bladder cancer. 38 C.F.R. § 3.309 (f) (2016)(amended March 14, 2017). The rule applies to all claims pending before the finalization of the rule on March 14, 2017, as here.

The record in this case shows that the Veteran was stationed at Camp Lejeune for at least 30 days during his period of active duty from August 1976 to May 1978. Therefore, he is presumed to have been exposed to contaminated water therein. 

However, prostate cancer and chondrosarcoma (or bone cancer) are not entitled to presumptive service connection based on exposure to contaminated water at Camp Lejeune. Apart from the presumptive conditions noted above, service connection for any disability claimed to have resulted from contaminated water exposure at Camp Lejeune requires sufficient medical evidence to establish the required nexus.

In rendering a decision on appeal, the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material favorable to the claimant. Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994); Gilbert v. Derwinski, 1 Vet. App. 49, 57 (1990). Competency of evidence differs from weight and credibility. Competency is a legal concept determining whether testimony may be heard and considered by the trier of fact, while credibility is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted. Rucker v. Brown, 10 Vet. App. 67, 74 (1997); Layno v. Brown, 6 Vet. App. 465, 469 (1994). 

When considering whether lay evidence is competent, the Board must determine, on a case-by-case basis, whether a veteran's particular disability is the type of disability for which lay evidence may be competent. Kahana v. Shinseki, 24 Vet. App. 428 (2011); see also Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). A veteran is competent to report symptoms because this requires only personal knowledge, not medical expertise, as it comes to him through his senses. See Layno, 6 Vet. App. 465, 469. Lay testimony is competent to establish the presence of observable symptomatology, where the determination is not medical in nature and is capable of lay observation.. Barr v. Nicholson, 21 Vet. App. 303 (2007). Lay evidence may establish a diagnosis of a simple medical condition, a contemporaneous medical diagnosis, or symptoms that later support a diagnosis by a medical professional. Jandreau, 492 F.3d 1372, 1377. 

In the case of conflicting medical opinions, the Board must weigh the credibility and probative value of the medical opinions, and in so doing, the Board may favor one medical opinion over the other. See Evans v. West, 12 Vet. App. 22, 30 (1998) (citing Owens v. Brown, 7 Vet. App. 429, 433 (1995)); see also Wensch v. Principi, 15 Vet. App. 362, 368 (2001) (it is not error for the Board to favor the opinion of one competent medical expert over that of another when the Board gives an adequate statement of reasons and bases for doing so). The probative value of medical opinion evidence is based on the medical expert's personal examination of the patient, the physician's knowledge and skill in analyzing the data, and the medical conclusion the physician reaches. Guerrieri v. Brown, 4 Vet. App. 467, 470 (1993). Other factors affecting the probative value of a medical opinion include thoroughness and degree of detail, and a well-reasoned rationale. See Prejean v. West, 13 Vet. App. 444, 448-49 (2000); see also Bloom v.West, 12 Vet. App. 185, 187 (1999). The credibility and weight to be attached to these opinions is within the province of the Board. Id.

When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with a veteran prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case, the claim is denied. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102.

Service Connection Claim for Chondrosarcoma- Analysis

The Veteran is diagnosed with, and treated for, chondrosarcoma. Residual symptoms include fatigue, left leg and hip problems, and pain. See VA treatment records, January 2016 Board videoconference hearing transcript. 

The Veteran asserts that his chondrosarcoma is related to, or caused by, his presumed exposure to contaminants in the water supply at Camp Lejeune, and as determined above, he is presumed to have been exposed to the contaminants in the water supply at Camp Lejeune. 

Turning to the issue of etiology, the claims file contains a July 2013 opinion authored by an occupational medicine specialist who opined that the Veteran's chondrosarcoma is not caused by, or a result of, the Veteran's exposure to contaminants in the water supply at Camp Lejeune. He explained that a review of the relevant medical and scientific literature revealed no studies that establish, or even posit, a link between the development of chondrosarcoma and solvents. He further explained that most chondrosarcomas are idiopathic and are considered primary chondrosarcomas; that is, they do not develop from other soft tissue abnormalities and have no known exogenous risk factors. An idiopathic disease is one where the cause is unknown. See Lantham v. Brown, 7 Vet. App. 359, 361 (1995); see also Allen v. Brown, 7 Vet. App. 439, 443 (1998) ("[D]efined in Dorland's Illustrated Medical Dictionary 815 (27th ed. 1988) as 'of the nature of an idiopathy [a morbid state of spontaneous origin; one neither sympathetic nor traumatic]; self-originated; of unknown causation."). 
To the contrary, the record contains an October 2014 opinion authored by the Veteran's treating VA oncologist (since 2013) who opined that his chondrosarcoma is at least as likely as not secondary to his exposure to the contaminated water at Camp Lejeune. The oncologist explained that if the Veteran was exposed to chemicals that are known to be carcinogenic, such as the contaminants at Camp Lejeune, then the probability of related cancer is extremely high. 

Finally, the record also contains a September 2016 opinion authored by a VA oncologist. That examiner determined that the Veteran's chondrosarcoma is less likely than not that related to contaminated water exposure at Camp Lejeune, reasoning that (a) she was unable to identify any case reports or any literature to suggest an association between chemicals or contaminants such as benzene or vinyl chloride and the development of chondrosarcoma, (b) that chondrosarcoma is a rare form of bone cancer, and (c) the cause of chondrosarcoma is not clear. 

The Veteran challenges the adequacy and probative value of the 2013 and 2016 opinions for various reasons, and the Board finds inadequacies in both. Having reviewed all opinions of record, the Board finds the October 2014 opinion provided by the Veteran's VA treating oncologist to be the most probative on the question of whether the Veteran's chondrosarcoma is related to, or caused by, his presumed exposure to contaminated water at Camp Lejeune. The October 2014 oncologist in this case provided an opinion as to the nature and etiology of the Veteran's chondrosarcoma and provided an adequate rationale for the opinion. Moreover, as the Veteran's treating oncologist, he is aware of the Veteran's medical treatment history and exposure to contaminated water at Camp Lejeune during service. The Board recognizes that the Court has not fully embraced a "treating physician rule" under which a treating physician's opinion would presumptively be given greater weight than that of any other examiner. See Winsett v. West, 11 Vet. App. 420, 424-25 (1998); Guerrieri v. Brown, 4 Vet. App. 467, 471-73. Regardless, the length of a medical professional's opportunity or opportunities to examine a claimant may be considered in assigning probative weight. Guerrieri, 4 Vet. App. at 471-73. 

Accordingly, the Board will resolve any reasonable doubt to find that the Veteran's chondrosarcoma is related to his exposure to contaminated water at Camp Lejeune. See 38 C.F.R. §§ 3.102, 3.303, 3.307(a)(7). The appeal is therefore granted.





Service Connection Claim for Prostate Cancer - Analysis

The Veteran is also diagnosed with, and treated for, prostate cancer. VA treatment records show that his residual symptoms include nocturia and incomplete bladder emptying. 

The Veteran also asserts that his prostate cancer is related to, or caused by, exposure to contaminant in the water supply at Camp Lejeune, and as determined above, the Veteran is presumed to have been exposed to the contaminants in the water supply at Camp Lejeune. 

Turning to the issue of etiology of the Veteran's prostate cancer, the record contains multiple opinions.

The July 2013 VA occupational medicine specialist opined that the Veteran's prostate cancer was not caused by, or a result of, the Veteran's exposure to contaminated water at Camp Lejeune. He explained that prostate cancer is very common in males and has several known risk factors. The VA occupational medicine physician concluded that the Veteran's prostate cancer is not due to his exposure to contaminated water at Camp Lejeune based upon his length of time at Camp Lejeune, estimated solvent exposure at Camp Lejeune, and the identified literature. 

The record also contains an October 2014 opinion authored by the Veteran's treating VA oncologist who opined that his prostate cancer is, as likely as not (50 percent probability or greater), secondary to his exposure to contaminated water at Camp Lejeune (containing chemicals such as benzene, TCE, PCE, and VC). He explained that prostate cancer is related to certain exposures. 

Finally, the record also contains a September 2016 opinion authored by a VA oncologist who opined that it is less likely than not that the Veteran's prostate cancer is related to contaminated water exposure at Camp Lejeune, "given that prostate cancer is quite common and occurs more often in African American patients without an established link to chemical exposure." 

The Veteran challenges the adequacy and probative value of the 2013 and 2016 opinions for various reasons, and the Board finds inadequacies in both. Having reviewed all opinions of record, the Board finds the October 2014 opinion provided by the Veteran's VA treating oncologist to be the most probative opinion of record on the question of whether his prostate cancer is related to, or caused by, his presumed exposure to contaminated water at Camp Lejeune. The October 2014 oncologist in this case provided an opinion as to the nature and etiology of the Veteran's prostate cancer and provided an adequate rationale for his opinion. Moreover, as the Veteran's treating oncologist, he is aware of the Veteran's medical treatment history and exposure to contaminated water at Camp Lejeune during service. As indicated above, the length of a medical professional's opportunity or opportunities to examine a claimant may be considered in assigning probative weight. Guerrieri, 4 Vet. App. at 471-73. Accordingly, the Board will resolve any reasonable doubt to find that the Veteran's prostate cancer is related to his exposure to contaminated water at Camp Lejeune. See 38 C.F.R. §§ 3.102, 3.303, 3.307(a)(7). The appeal is therefore granted.

ORDER

New and material evidence has been received and the claim for entitlement to service connection for chondrosarcoma is reopened.

Service connection for chondrosarcoma, claimed as secondary to exposure to contaminated water at Camp Lejeune, is granted.

Service connection for prostate cancer, claimed as secondary to exposure to contaminated water at Camp Lejeune, is granted.



______________________________________________
S. B. MAYS
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs