Citation Nr: 1339294 
Decision Date: 11/29/13 Archive Date: 12/13/13

DOCKET NO. 12-09 829 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Winston-Salem, North Carolina


THE ISSUES

1. Entitlement to an initial disability rating in excess of 10 percent for generalized anxiety disorder.

2. Entitlement to a total disability rating based on individual unemployability (TDIU). 


ATTORNEY FOR THE BOARD

Journet Shaw, Associate Counsel



INTRODUCTION

The Veteran served on active duty from September 1965 to June 1967 and June 1971 to September 1993.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a March 2011 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Winston-Salem, North Carolina.

In addition to the paper claims file, there is a Virtual VA paperless claims file associated with the Veteran's appeal. A review of the Virtual VA claims file reveals VA treatment records dated through March 2012, which have been considered by the RO in the April 2012 statement of the case.

The claim of entitlement to TDIU is addressed in the REMAND portion of the decision below and is REMANDED to the RO via the Appeals Management Center (AMC), in Washington, DC.


FINDING OF FACT

The Veteran's generalized anxiety disorder is most appropriately characterized by occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress, or; symptoms controlled by continuous medication.


CONCLUSION OF LAW

The criteria for entitlement to an initial disability rating in excess of 10 percent for generalized anxiety disorder have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107(b) (West 2002); 38 C.F.R. §§ 3.102, 3.159, 4.1, 4.3, 4.7, 4.10, 4.126, 4.130, Diagnostic Code 9400 (2013).


REASONS AND BASES FOR FINDING AND CONCLUSION

The Board has thoroughly reviewed all the evidence in the claims file, and has an obligation to provide an adequate statement of reasons or bases supporting its decision. See 38 U.S.C.A. § 7104 (West 2002); Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). While the Board must review the entire record, it need not discuss each piece of evidence. Id. The analysis below focuses on the most salient and relevant evidence and on what this evidence shows, or fails to show, on the claim. It should not be assumed that the Board has overlooked pieces of evidence that are not explicitly discussed herein. See Timberlake v. Gober, 14 Vet. App. 122 (2000). The law requires only that the Board address its reasons for rejecting evidence favorable to the claimant. Id. 

The Board must assess the credibility and weight of all evidence, including the medical evidence, to determine its probative value, accounting for evidence which it finds to be persuasive or unpersuasive, and providing reasons for rejecting any evidence favorable to the claimant. Caluza v. Brown, 7 Vet. App. 498, 506 (1995). Equal weight is not accorded to each piece of evidence contained in the record, and every item of evidence does not have the same probative value. Gilbert v. Derwinski, 1 Vet. App. 49 (1990). When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the claimant prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case, the claim is denied. Id. 

I. Duties to Notify and Assist

As provided for by the Veterans Claims Assistance Act of 2000 (VCAA), the VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002 & Supp. 2012); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2013). 

Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his or her representative, if any, of any information, and any medical or lay evidence, that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Quartuccio v. Principi, 16 Vet. App. 183 (2002). Proper notice from VA must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. This notice must be provided prior to an initial unfavorable decision on a claim by the agency of original jurisdiction (AOJ). Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004). 

In Dingess v. Nicholson, 19 Vet. App. 473 (2006), the U.S. Court of Appeals for Veterans Claims (Court) held that, upon receipt of an application for a service-connection claim, 38 U.S.C. § 5103(a) and 38 C.F.R. § 3.159(b) require VA to review the information and the evidence presented with the claim and to provide the claimant with notice of what information and evidence not previously provided, if any, will assist in substantiating, or is necessary to substantiate, each of the five elements of the claim, including notice of what is required to establish service connection and that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded.

In cases where service connection has been granted and an initial disability rating and effective date have been assigned, the claim has been more than substantiated, it has been proven, and thereby rendering section 5103(a) notice no longer required because the purpose that the notice is intended to serve has been fulfilled. Dingess v. Nicholson, 19 Vet. App. 473 (2006). Thus, because the notice that was provided before service connection for generalized anxiety disorder was granted was legally sufficient, VA's duty to notify in this case has been satisfied.

VA also has a duty to assist the Veteran in the development of the claim. This duty includes assisting the Veteran in the procurement of pertinent records and providing an examination when necessary. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. VA has obtained all identified and available treatment records for the Veteran. In addition, the Veteran underwent a VA examination in February 2011. The Board finds that the VA examination is adequate, because the examination included a review of the claims file, an interview of the Veteran, and examination findings supported by rationale. See Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). The Board also observes that the Veteran has not contended, and the evidence does not suggest, that his generalized anxiety disorder has worsened since the February 2011 examination. For these reasons, further examination is not necessary. See Palczewski v. Nicholson, 21 Vet. App. 174, 181 (2007); VAOPGCPREC 11-95 (1995), 60 Fed. Reg. 43186 (1995); cf. Snuffer v. Gober, 10 Vet. App. 400, 403 (1997). In light of the foregoing, the Board finds that VA has provided the Veteran with every opportunity to submit evidence and arguments in support of his increased rating claim. The Veteran has not identified any outstanding evidence that needs to be obtained. 

For the above reasons, the Board finds that VA has fulfilled its duties to notify and assist the Veteran. No useful purpose would be served in remanding this matter for yet more development. Such a remand would result in unnecessarily imposing additional burdens on VA, with no additional benefit flowing to the Veteran. The Court has held that such remands are to be avoided. Sabonis v. Brown, 6 Vet. App. 426, 430 (1994).

II. Increased Rating

Service connection for generalized anxiety disorder was established in a March 2011 rating decision, at which time the RO assigned an initial 10 percent disability rating pursuant to 38 C.F.R. § 4.130, Diagnostic Code (DC) 9400, effective October 11, 2007. The Veteran has appealed the assignment of the initial 10 percent disability rating. 

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities, found in 38 C.F.R., Part 4. The rating schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of, or incident to, military service. The ratings are intended to compensate, as far as can practicably be determined, the average impairment of earning capacity resulting from such diseases and injuries and their residual conditions in civilian occupations. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. 

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise the lower rating will be assigned. 38 C.F.R. § 4.7. 

Under Diagnostic Code 9400, which is governed by a General Rating Formula for Mental Disorders, a 10 percent rating is warranted for occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress, or; symptoms controlled by continuous medication. 38 C.F.R. § 4.130, Diagnostic Code 9400 (2013). 

A 30 percent rating is warranted for occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood; anxiety; suspiciousness; panic attacks (weekly or less often); chronic sleep impairment; and/or mild memory loss (such as forgetting names, directions, recent events). Id.

A 50 percent rating is warranted for occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; and/or difficulty in establishing and maintaining effective work and social relationships. Id. 

A 70 percent rating is warranted for occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately, and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); and/or inability to establish and maintain effective relationships. Id. 

A 100 percent rating is warranted for total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; and/or memory loss for names of close relatives, own occupation, or own name. Id. 

When evaluating the level of disability from a mental disorder, the rating agency will consider the extent of social impairment, but shall not assign an evaluation solely on the basis of social impairment. 38 C.F.R. § 4.126 (2013). 

One factor for consideration is the Global Assessment of Functioning (GAF) score, which is a scale reflecting the "psychological, social, and occupational functioning in a hypothetical continuum of mental health-illness." Carpenter v. Brown, 8 Vet. App. 240, 242 (1995) (citing Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM-IV)). A GAF score of 71 to 80 indicates that if symptoms are present, they are transient and expectable reactions to psychosocial stressors (e.g., difficulty concentrating after family argument); no more than slight impairment in social, occupational, or school functioning (e.g., temporarily falling behind in schoolwork). A GAF score of 61 to 70 indicates some mild symptomatology (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, with some meaningful interpersonal relationships. Scores ranging from 51 to 60 reflect moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). Scores ranging from 41 to 50 reflect serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). While the Rating Schedule does indicate that the rating agency must be familiar with the DSM-IV, it does not assign disability percentages based solely on GAF scores. See 38 C.F.R. § 4.130 (2013).

The Veteran contends that his service-connected anxiety disorder has impacted his ability to work. 

In October 2007, the Veteran underwent a psychiatric evaluation by a private psychiatrist. He reported that he experienced flashbacks which mostly occurred at night and contributed to his sleeping problems. The Veteran said that he avoided crowds and kept to himself, even at work. After serving 22 years in the Air Force, he had worked as a correction officer for two years and then at the post office for 12 years, until he retired in 2007. He said that his stressful symptoms improved initially after he retired, because he did not have to interact with people anymore. The Veteran was deemed a reliable historian. On objective evaluation, the Veteran had logical and goal directed thought process, normal speech, no auditory or visual hallucinations, good insight and judgment, alert and oriented cognition, good eye contact, and there was no evidence of psychosis or delusion. It was noted that the Veteran was anxious and depressed and medication was recommended. The GAF score was 45.

Additional private treatment records dated from January 2008 to November 2011 show that the Veteran continued to experience sleeping problems due to flashbacks and nightmares, but he also reported improvement with the use of medication. He explained that he had separated from his wife in December 2007 and that he was "much happier." He said that he did not socialize, had no friends, and was not working. In a July 2008 private treatment record, the Veteran reported that he traveled to visit his daughter. In private treatment records dated June 2009 through December 2009, the Veteran said he was volunteering with the USO, trying to engage in other social activities, and involved in a new relationship. The Veteran described that he felt depressed and anxious, and that he was uncomfortable socializing. In a May 2011 private treatment record, the Veteran reported increased flashbacks and nightmares after a tornado hit his home and took off a portion of his roof. The private treatment records reflect that the treating psychiatrist found the Veteran to be anxious, depressed, guarded, and mistrustful.

At a February 2011 VA examination, the Veteran reported his symptoms of insomnia and nightmares and stated that without sleep medication, the insomnia would occur nightly. The Veteran reported that he had two previous marriages, one that ended after he left the Air Force, and the other that lasted less than a year. He described having a good relationship with his 37 year-old daughter. The Veteran reported obtaining two Associates degrees after service and being employed as a correction officer and postal clerk. He retired from his job with the post office in 2007. The Veteran said he danced at clubs, rode his motorcycle, played golf, and volunteered twice a month at the local airport USO. The examining psychiatrist found the Veteran exhibited no impairment of thought process or communication, had adequate personal hygiene, normal rate of speech, no impairment of impulse control, no suicidal or homicidal ideation, no obsessions or compulsions, and no reported panic attacks. The examiner also reported that the Veteran had a depressed mood and short-term memory problems. The examiner found that the Veteran's symptoms of "chronic anxiety, hyperarousal, and re-experiencing symptoms" established a diagnosis of generalized anxiety disorder and assigned a GAF score of 55. The examiner determined that the Veteran's insomnia and nightmares did not impact his daytime activities. The examiner also opined that the Veteran's prognosis for improvement was "good" and that his symptoms were "transient or mild" and only caused a decrease in work efficiency and ability "during periods of significant stress."

The Veteran asserts that his treating psychiatrist's opinion is highly probative and establishes that his generalized anxiety disorder symptoms cause serious impairment despite years of treatment. The Board acknowledges that it may not reject medical determinations based on its own medical judgment. See generally Obert v. Brown, 5 Vet. App. 30 (1993); see also Colvin v. Derwinski, 1 Vet. App. 171 (1991) (specifically referring to medical opinions). The Board also acknowledges that it is neither free to ignore the opinion of a treating physician nor required to accord it additional or dispositive weight. The Court has declined to adopt a "treating physician rule" under which a treating physician's opinion would presumptively be given greater weight than that of a VA examiner or another doctor. See Winsett v. West, 11 Vet. App. 420, 424-25 (1998); Guerrieri v. Brown, 4 Vet. App. 467, 471-73 (1993). The United States Court of Appeals for the Federal Circuit (Federal Circuit) also has declined to adopt a "treating physician rule," which would give preference, i.e., additional evidentiary weight, to this type of evidence. See White v. Principi, 243 F.3d 1378 (Fed. Cir. 2001).

In assessing the probative value to be assigned to a medical opinion, the Board must consider whether a medical expert was fully informed of the pertinent facts of the case, whether the medical expert provided a fully articulated opinion, and whether the opinion is supported by a reasoned analysis. See Nieves-Rodriquez v. Peake, 22 Vet. App. 295, 302-304 (2008). 

Here, the Board notes that the treating psychiatrist's opinion that the Veteran's symptoms were serious were based on his initial evaluation of the Veteran in October 2007 and before the Veteran's clinical therapy and treatment with medication. Subsequent private treatment records do not reflect a comprehensive re-assessment of the Veteran's condition and progress with medication. The treating psychiatrist only recorded the Veteran's reported symptoms and briefly noted his evaluation of the Veteran's current mental status. 

Conversely, the February 2011 VA examining psychiatrist provided a thorough examination of the Veteran, reviewing his past and present mental health history and treatment, and assessing his social, occupational, and educational history. Based upon his findings, the examining psychiatrist concluded that the Veteran's symptoms were of such a mild and transient nature that they did not cause a significant effect on his ability to perform occupational tasks. Therefore, given the comprehensive nature of the February 2011 opinion, the Board finds such more probative in assessing the severity of the Veteran's generalized anxiety disorder symptoms in comparison to the earlier October 2007 private opinion. 

Having carefully considered the Veteran's contentions in light of the evidence of record and the applicable law, the Board finds that the Veteran's generalized anxiety disorder is most appropriately evaluated as 10 percent disabling. As discussed above, the Veteran maintained good social interactions as exhibited by his relationship with his daughter, that he reported was "good," his socializing with friends, his volunteering, and his interests. While the Veteran reported continuous complaints of insomnia and nightmares, the record reflects that the symptoms were helped by medication. In addition, since leaving service in Vietnam, the Veteran obtained two Associates degrees, served for an additional 22 years in the Air Force, and maintained steady employment until 2007, when he retired from the post office at the age of 62. 

The Board has considered whether a rating of in excess of 10 percent is warranted. For the reasons discussed above, the Board concludes that the preponderance of the evidence weighs against a finding that the Veteran's generalized anxiety disorder more closely approximates the criteria for a 30 percent rating. The record does not show any symptoms of panic attacks, memory loss, or suspiciousness. Although the February 2011 VA examination report shows that the Veteran exhibited symptoms of insomnia, anxiety, and depressed mood, the examiner found that those symptoms were so transient or mild as to only cause a decrease in work efficiency under periods of significant stress, as exhibited by his ability to maintain a long employment history since service and a full life in retirement. Therefore, the Board finds that the Veteran's symptoms are more appropriately assigned a 10 percent rating. 

The Board also finds that the evidence of record does not support the assignment of a staged disability rating. Where the evidence contains factual findings that demonstrate distinct time periods in which the service-connected disability exhibits symptoms that would warrant different evaluations during the course of the appeal, the assignment of staged ratings is appropriate. See Fenderson v. West, 12 Vet. App. 119, 126-127 (1999). All benefit of the doubt will be resolved in the Veteran's favor. 38 C.F.R. § 4.3. After a careful review of the record, the Board can find no credible evidence to support a finding that the Veteran's generalized anxiety disorder was more or less severe during the appeal period. 

The Board has also considered whether the Veteran's generalized anxiety disorder presents an exceptional or unusual disability picture as to render impractical the application of the regular schedular standards such that referral to the appropriate officials for consideration of an extraschedular rating is warranted. See 38 C.F.R. § 3.321(b)(1) (2011); Bagwell v. Brown, 9 Vet. App. 337, 338-39 (1996). The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. See Fisher v. Principi, 4 Vet. App. 57, 60 (1993) ("[R]ating schedule will apply unless there are 'exceptional or unusual' factors which render application of the schedule impractical."). Here, the rating criteria reasonably describe the Veteran's disability level and symptomatology, and provide for higher ratings for additional or more severe symptomatology than is shown by the evidence. Thus, his disability picture is contemplated by the rating schedule, and the assigned schedular evaluations are, therefore, adequate. See Thun v. Peake, 22 Vet. App. 111, 115 (2008). 

Thus, with the preponderance of the evidence against the assignment of a higher initial rating, the benefit-of the doubt doctrine is not applicable. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990). 


ORDER

Entitlement to an initial disability rating in excess of 10 percent for generalized anxiety disorder is denied.


REMAND

This TDIU claim needs to be further developed before being adjudicated. See VAOGCPREC 6-96 (Aug. 16, 1996); VAOGCPREC 12-2001 (July 6, 2001). Additional information is needed to determine the degree of occupational impairment resulting from the Veteran's service-connected disabilities (chronic low back strain, bilateral hearing loss, recurrent kidney stones, residual scars status post coronary artery bypass graft, actinic keratosis with extension sun damage and lesion to the right ear, generalized anxiety disorder, and coronary artery disease). See Beaty v. Brown, 6 Vet. App. 532 (1994). 

The Veteran should be provided with notice of any information or lay or medical evidence necessary to substantiate the TDIU claim. The notice should also indicate what information or evidence should be provided by the Veteran and what information or evidence VA will attempt to obtain on the Veteran's behalf. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b). 

Finally, the Veteran should be requested to identify all treatment providers, both VA and private, so that the Board can make a decision on his appeal. The AOJ should make appropriate efforts to obtain any outstanding relevant VA treatment records, to include all outstanding VA mental health treatment records. 38 U.S.C.A. § 5103A(b)(3), (c)(2); 38 C.F.R. § 3.159(c)(2), (3). If private treatment is indicated, the AOJ should obtain those records as well, using the appropriate releases. Any records not duplicative of the evidence already of record should be associated with the Veteran's claims file, to include the virtual record. 

Accordingly, the case is REMANDED for the following action:

1. The RO/AMC should send a VCAA notice letter notifying the Veteran of any information or lay or medical evidence not previously provided that is necessary to substantiate the TDIU claim on appeal. This notice must indicate what information or evidence the Veteran should provide, and of what information or evidence VA will attempt to obtain on his behalf.

2. Concurrent with the above, the RO/AMC should advise the Veteran of the potential relevance of his employment records and inquire if he has received any pertinent private medical treatment for his service-connected disabilities. The RO/AMC should provide him with an authorization for release of records from any relevant employers and/or private treatment providers. 

If any authorizations are received from the Veteran, make reasonable attempts to obtain the identified records and associate any available records with the claims file or virtual record. If unable to obtain any of the relevant records sought, notify the Veteran of the unavailability of the records by identifying the specific records not obtained, explaining the efforts used to obtain those records, and describing any further action to be taken with respect to the claim. 38 U.S.C.A. § 5103A(b)(2) (West 2002).

3. The RO/AMC should obtain and associate with the claims file or virtual record all outstanding VA treatment records from March 2012 to the present.

All efforts to obtain these records must be documented in the claims file or virtual record. Such efforts should continue until they are obtained or it is reasonably certain that they do not exist or that further efforts would be futile. 

4. After additional relevant treatment and/or employment records are obtained and associated with the claims file or virtual record, schedule the Veteran for a VA examination to determine the effect of his service-connected disabilities on his employability. 

The claims file, including a copy of this remand and any relevant records contained in the virtual record, must be sent to the examiner for review; consideration of such should be reflected in the completed examination report or in an addendum.

Based on examination findings and other evidence contained in the claim file and virtual record, the examiner must offer an opinion as to the likelihood that the Veteran is unable to obtain or maintain substantially gainful employment as a result of his service-connected disabilities, which at present are: chronic low back strain, bilateral hearing loss, recurrent kidney stones, residual scars status post coronary artery bypass graft, actinic keratosis with extension sun damage and lesion to the right ear, generalized anxiety disorder, and coronary artery disease.

The examiner must consider the Veteran's level of education, experience, and occupational background in determining whether he is unable to secure or maintain substantially gainful employment in light of his service-connected disabilities.

The examination report must include a complete rationale for all opinions and conclusions expressed. 

5. Then, the RO should readjudicate the claim. If the claim is not granted in full, the Veteran must be provided a supplemental statement of the case (SSOC). The SSOC must contain notice of all relevant actions taken on the claim, to include a summary of the evidence and applicable laws and regulations considered pertinent to the issues currently on appeal. An appropriate period of time must be allowed for response. Thereafter, if indicated, the case must be returned to the Board for appellate decision.

The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2012).




______________________________________________
K. Parakkal
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs