Citation Nr: 1554531 
Decision Date: 12/31/15 Archive Date: 01/07/16

DOCKET NO. 11-17 374 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Montgomery, Alabama


THE ISSUES

1. Entitlement to service connection for hearing loss. 

2. Entitlement to service connection for a back condition. 

3. Entitlement to service connection for tinnitus. 

4. Entitlement to service connection for sinusitis. 

5. Entitlement to service connection for headaches. 


ATTORNEY FOR THE BOARD

Zi-Heng Zhu, Associate Counsel




INTRODUCTION

The Veteran served on active duty for training (ACDUTRA) in the United States Army National Guard from August 1979 to February 1980, and unverified inactive duty training (INACDUTRA) until May 2001, thereafter.

These matters come before the Board of Veterans' Appeals (Board) on appeal of an October 2009 rating decision of the Montgomery, Alabama, Regional Office (RO) of the Department of Veterans Affairs (VA), which denied the Veteran's claims for service connection. 

By way of procedural history, the Board notes that the Veteran's claims noted above has been remanded by the Board twice in the past for further development, in July 2014 and February 2015. The Board finds that the RO has substantially accomplished such developments and the claims are properly before the Board for appellate review and adjudication. 

This appeal was processed using the VBMS paperless claims processing system. Accordingly, any future consideration of this Veteran's case should review this electronic record.

The issues of entitlement to service connection for hearing loss, sinusitis, and back are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. Giving the Veteran the benefit-of-the-doubt, the Veteran has suffered from his diagnosed tinnitus since his military service. 

2. The preponderance of the evidence is against the finding that the Veteran suffers from chronic headaches. 

CONCLUSIONS OF LAW

1. Resolving all benefit of the doubt in the Veteran's favor, the criteria to establish service connection for tinnitus have been met. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1154, 5103, 5103A, 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307 (2015).

2. The criteria are not met for entitlement to service connection for headaches. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1154, 5103, 5103A, 5107(b); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309, 3.385.


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

In this decision the Board will discuss the relevant laws which it is required to apply. This includes statutes enacted by Congress and published in Title 38, United States Code (38 U.S.C.A.); regulations promulgated by VA under the law and published in the Title 38 of the Code of Federal Regulations (38 C.F.R.) and the precedential rulings of the Court of Appeals for the Federal Circuit (as noted by citations to Fed. Cir.) and the Court of Appeals for Veterans Claims (as noted by citations to Vet.App.).

The Board is bound by statute to set forth specifically the issue under appellate consideration and its decision must also include separately stated findings of fact and conclusions of law on all material issues of fact and law presented on the record, and the reasons or bases for those findings and conclusions. See 38 U.S.C.A. § 7104(d); see also 38 C.F.R. § 19.7 (implementing the cited statute); see also Vargas-Gonzalez v. West, 12 Vet.App. 321, 328 (1999); Gilbert v. Derwinski, 1 Vet.App. 49, 56-57 (1990) (the Board's statement of reasons and bases for its findings and conclusions on all material facts and law presented on the record must be sufficient to enable the claimant to understand the precise basis for the Board's decision, as well as to facilitate review of the decision by courts of competent appellate jurisdiction). The Board must also consider and discuss all applicable statutory and regulatory law, as well as the controlling decisions of the appellate courts.

The Board must determine the value of all evidence submitted, including lay and medical evidence. See Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006). However, although an obligation to provide sufficient reasons and bases in support of an appellate decision exists, there is no need to discuss, in detail, all of the evidence submitted by the Veteran or on his or her behalf. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (holding that the entire record must be reviewed, but each piece of evidence does not have to be discussed). 

The evaluation of evidence generally involves a three-step inquiry. First, the Board must determine whether the evidence comes from a "competent" source. The Board must then determine if the evidence is credible, or worthy of belief. See Barr v. Nicholson, 21 Vet.App. 303, 308 (2007) (observing that once evidence is determined to be competent, the Board must determine whether such evidence is also credible). The third step of this inquiry requires the Board to weigh the probative value of the proffered evidence in light of the entirety of the record.

Competent lay evidence means any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person. 38 C.F.R. § 3.159(a). Lay evidence may be competent and sufficient to establish a diagnosis of a disorder when:

(1) a layperson is competent to identify the medical condition (i.e., when the layperson will be competent to identify the condition where the condition is simple, for example a broken leg, and sometimes not, for example, a form of cancer);

 (2) the layperson is reporting a contemporaneous medical diagnosis, or;

(3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional.

Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); see also Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009).

Competent medical evidence is evidence provided by a person who is qualified through education, training, or experience to offer medical diagnoses, statements, or opinions. Competent medical evidence may also include statements conveying sound medical principles found in medical treatises. It also includes statements contained in authoritative writings, such as medical and scientific articles and research reports or analyses. 38 C.F.R. § 3.159(a)(1).

In determining whether statements submitted by a veteran are credible, the Board may consider their internal consistency, facial plausibility, and consistency with other evidence submitted on behalf of the claimant. See Caluza v. Brown, 7 Vet. App. at 711, aff'd, 78 F.3d 604 (Fed. Cir. 1996) (per curiam) (table); see also Madden v. Gober, 125 F.3d 1447, 1481 (Fed Cir. 1997) (holding that the Board has the "authority to discount the weight and probative value of evidence in light of its inherent characteristics in its relationship to other items of evidence"). Further, the Federal Circuit has held that while the absence of contemporaneous medical records does not, in and of itself, render lay testimony not credible, the Board may weigh the absence of contemporaneous records when assessing the credibility of lay evidence. See Buchanan, 451 F.3d at 1336 ("Nor do we hold that the Board cannot weigh the absence of contemporaneous medical evidence against the lay evidence of record."). Moreover, although the Board cannot reject a claimant's statements merely because he is an interested party, the claimant's interest may affect the credibility of his testimony when considered in light of the other factors. See Cartright, 2 Vet. App. at 25; accord Buchanan, 451 F.3d at 1337 (holding that "the Board, as fact finder, is obligated to, and fully justified in, determining whether lay evidence is credible in and of itself, i.e., because of possible bias...").

After determining the competency and credibility of evidence, the Board must then weigh its probative value. The standard of proof to be applied in decisions on claims for veterans' benefits is set forth in 38 U.S.C.A. § 5107 (West 2002). A claimant is entitled to the benefit of the doubt when there is an approximate balance of positive and negative evidence. See 38 C.F.R. § 3.102. When a claimant seeks benefits and the evidence is in relative equipoise, the claimant prevails. See Gilbert v. Derwinski, 1 Vet.App. 49 (1990). The preponderance of the evidence must be against the claim for benefits to be denied. See Alemany v. Brown, 9 Vet.App. 518 (1996).

Duties to Assist and Notify

VA has satisfied its duties under the Veteran's Claims Assistance Act of 2000 (VCAA) to notify and assist. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.159, 3.326(a) (2014).

VA's duty to assist under the VCAA includes helping claimants to obtain service treatment records (STRs) and other pertinent records, including private medical records (PMRs). See 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159(c). The claims file contains the Veteran's STRs and VA medical records (VAMRs). The duty to obtain relevant records is satisfied. See 38 C.F.R. § 3.159(c).

VA's duty to assist also includes providing a medical examination and/or obtaining a medical opinion when necessary to make a decision on the claim, as defined by law. See 38 U.S.C.A. § 5103A; 38 C.F.R. §§ 3.159(c)(4), 3.326(a); McLendon v. Nicholson, 20 Vet. App. 79 (2006). An adequate examination must consider the issue at hand and provide sufficient analysis for the Board to weigh that examination against others. Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007). However, "there is no reasons or bases requirement imposed on examiners." Acevedo v. Shinseki, 25 Vet. App. 286, 293 (2012). Rather, a medical opinion is adequate when it is based on consideration of the veteran's prior medical history and examinations, and the final report describes the disability in sufficient detail so that the Board's "'evaluation of the claimed disability will be a fully informed one.'"Ardison v. Brown, 6 Vet. App. 405, 407 (1994) (quoting Green v. Derwinski, 1 Vet. App. 121, 124 (1991)). The Board finds that the VA examinations provided for the issues decided herein, are adequate under the law. 

Service Connection -Tinnitus 

The Veteran claims that his diagnosed tinnitus is the result of the noise trauma he experienced during his active duty service. The Board notes that, while there is medical evidence that the Veteran's condition is unrelated to his military service, the Veteran assert that he has experienced ringing in his ears since his active duty service. The Board finds that the evidence of record is at least in equipoise, and in resolving all reasonable doubt in favor of the Veteran, his claim of service connection for tinnitus must be granted. 

Generally, establishing service connection generally requires medical or, in certain circumstances, lay evidence of (1) a current disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the present disability. See Davidson v. Shinseki, 581 F.3d 1313 (Fed.Cir.2009); Hickson v. West, 12 Vet. App. 247, 253 (1999). The second and third elements may be established by showing continuity of symptomatology. Continuity of symptomatology may be shown by demonstrating "(1) that a condition was 'noted' during service or any applicable presumption period; (2) evidence of post-service continuity of the same symptomatology; and (3) medical or, in certain circumstances, lay evidence of a nexus between the present disability and the post-service symptomatology." Barr v. Nicholson, 21 Vet. App. 303, 307 (2007); see also Davidson, 581 F.3d at 1316; Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007) (holding that "[w]hether lay evidence is competent and sufficient in a particular case is a factual issue to be addressed by the Board").

Here, the Veteran was afforded a VA C&P examination in July 2015 regarding his tinnitus. He was diagnosed with tinnitus by the VA examiner, thus fulfilling the first requirement of service connection. The record further confirms in-service noise exposure and acoustic trauma; to this end, the Veteran has continuously contended that ringing in his ears started shortly after a grenade exploded a few feet away from him during service. Additionally, the Veteran has also received commendations for his sharpshooting abilities with a rifle. See DD-214. While his personnel record does not list a military occupational specialty, the Board finds the Veteran is both competent and credible in asserting such in-service injury/incident. As such, giving the Veteran the benefit-of-the-doubt, the Board finds that he was in fact exposed to such noise trauma during service, to include his described incident to with a grenade explosion. 
 
Finally, with regard to nexus, or the relation between the Veteran's tinnitus and his military service, the Board finds that such is established by the Veteran's assertions of a continued condition since his training in service. As noted previously, the final element of service connection may be established through a showing of a continuity of symptomology of the claimed condition. In this regard, the Veteran, as a layperson, may be competent on a variety of matters concerning the nature and cause of a disability. see Jandreau v. Shinseki, 492 F.3d 1372, 1377 n.4. The Board finds that, the Veteran is without a doubt competent to report the he started experienced ringing, intermittently or otherwise, since his in-service grenade incident. See generally Charles v. Principi, 16 Vet. App 370, 374 (2002). 

However, once the threshold of competency is met, the Board must consider how much of a tendency a piece of evidence has to support a finding of the fact in contention. Not all competent evidence is of equal value. The Board does acknowledge that in the July 2015 VA examination, the examiner provided a negative nexus regarding the Veteran's tinnitus and his military service. The examiner opined that the Veteran's tinnitus was more likely related to his hearing loss, which she also concluded was not related to his military service. As part of her rationale, she spoke again regarding the lack of threshold shifts in the Veteran's hearing since he left service, even as late as 2001, when he left the reserves. However, the examiner did explicitly note that the Veteran has complained that he suffered from intermittent ringing in his ears since service. 

The Board finds that both the July 2015 medical examination and the Veteran's lay assertions to be at least equally probative. As such, where there exists "an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter," the Veteran shall prevail upon the issue. Ashley v. Brown, 6 Vet. App. 52, 59 (1993); see also Massey v. Brown, 7 Vet. App. 204, 206-207 (1994). Therefore, resolving all reasonable doubt in the Veteran's favor, the Board concludes that service connection for tinnitus is established, and the Veteran's claim must be granted. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49 (1990).


Service Connection -Headaches 

The Veteran also claims service connection for chronic headaches. To this end, the Veteran claims that he has been experiencing headaches since his time in Camp Shelby. However, the Board notes that the evidence of record does not show any chronic condition related to recurrent headaches. Both the medical evidence of record, as well as the lay statements from the Veteran fails to reveal any chronic condition relating to headaches, or any diagnoses of such. Consequently, the Veteran's claim of service connection for headaches must be denied. 

As noted above, to prevail on a claim of service connection on the merits, there must be competent evidence of (1) current disability; (2) medical, or in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence or other competent evidence of a nexus between the claimed in-service disease or injury and the present disease or injury. See Hickson v. West, 12 Vet. App. 247 (1999); see also Jandreau, 492 F.3d 1372 (Fed. Cir. 2007).

The threshold question that must be addressed is whether the Veteran has a current disability of chronic headaches, within the meaning of the law, for which service connection is sought. In the absence of proof of a present disability, as noted above, there is no valid claim of service connection. See Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992).

In July 2015, the Veteran was afforded a VA Compensation and Pension (C&P) examination for his claimed headaches. During the examination, when explicitly asked whether he suffered from recurrent/chronic headaches, he reported that he did not, and instead it was simply ringing in his ears, or his claimed tinnitus. Further examination found no additional issue or symptoms relating to chronic or recurrent headaches; the VA examiner ultimately gave no diagnosis for any headache related conditions. 

Likewise, a review of the Veteran's service and post-service treatment records in the claims file reveal no additional evidence, regarding a recurrent or chronic condition relating to headaches. In fact, other than the Veteran's lay statement, to only include his notice of disagreement, there is no additional evidence regarding any claimed condition of headaches. See Notice of Disagreement, dated October 15, 2009. 

The Board notes that while the Veteran, as a lay person, may be considered competent to speak to him experiencing headaches, he, however, has not been consistent regarding reporting such experiences. Here, the Veteran in October 2009, noted in his notice of disagreement that he experienced headaches since his time at Camp Shelby; however, upon examination in July 2015, he explicitly reported he experienced no headaches and only ringing in his ears. Such discrepancy calls into question the credibility of the Veteran's lay statements of an actual chronic condition. 

As such, the Board finds that, when viewing the evidence of record in its totality, regarding this claimed condition, the preponderance of the evidence is simply against the finding that the Veteran currently suffers from a chronic headache condition. The medical evidence of record, to include a VA examination, service and post-service treatment records, simply do not evidence any diagnosable condition related to headaches or even treatment thereof. Additionally, the Board finds that the Veteran's reporting of such headaches has been inconsistent regarding such a condition, and as such, cannot credibly rebut such competent medical evidence of record, or there-in-lack-of, where it would normally be expected (in treatment records or at the VA examination). 

Therefore, as the preponderance of the evidence is against the finding that the Veteran suffers from the claimed condition of chronic headaches, any inquiry to establish service connection must end. As the evidence has fails to demonstrate a diagnosable condition that the Veteran has suffered since service or caused by his service, the benefit-of-the-doubt doctrine is inapplicable, and the Veteran's claim must be denied. 



ORDER

Entitlement to service connection for tinnitus is granted. 

Entitlement to service connection for headaches is denied. 


REMAND

The Board finds that additional evidentiary development is necessary before the Board can adjudicate the Veteran's claims. Although the Board sincerely regrets the additional delay, it is necessary to ensure that there is a complete record upon which to decide the Veteran's claims so that he is afforded every possible consideration. 

Service Connection - Hearing Loss

The Veteran asserts that his current bilateral hearing loss is due to his military service. He contends that his condition is the result of an incident from which a grenade exploded within five feet of him during his active military service. The Veteran has claimed that he has experienced hearing loss since that incident. 

The Veteran was afforded a VA C&P examination in July 2015. During that examination, the VA examiner diagnosed the Veteran with hearing loss in both ears. Upon examination, the Veteran's auditory threshold for both ears registered above 40 dBs on at least one frequency, with discrimination testing consistently below 94 percent. The Board finds that there is no question as to the fact that the Veteran currently suffers from hearing loss in both his ears. However, in evaluating the etiology of such hearing loss, the examiner noted a negative nexus regarding the Veteran's hearing loss and his military service. To this end, the examiner noted that there was insufficient, to no, threshold shifts in the Veteran's audiograms from when he entered service to when he exited service. Therefore, the examiner concluded that the Veteran's current hearing loss could not be etiologically or causally related to his military service. 

The Board, however, finds that the July 2015 examiner nexus conclusion and rationale to be inadequate, as it is based exclusively on the lack of threshold shift in the Veteran's service treatment records, and fails to consider/address more recent research involving hearing loss and auditory hair cell damage. As noted above, the July 2015 examiner's only rationale for such a negative nexus opinion was based exclusively on the fact that the Veteran exited service with normal hearing, and a lack of any significant threshold shifts in his audiometric results. While the examiner report did note that the Veteran's grenade-blast incident and the noise trauma, the examiner also failed to incorporate any analysis of such incident. 

The most probative value of a medical opinion comes from its reasoning. Therefore, a medical opinion or conclusion, based on insufficient data or information, is not entitled to any weight. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (most of the probative value of a medical opinion comes from its reasoning; threshold considerations are whether the person opining is suitably qualified and sufficiently informed). While the July 2015 examiner provided a rationale for her opinion on the facts and information provided by the Veteran at the time of the examination, the Board finds that such reasoning remains inadequate for lack of consideration of the medical studies cited herein. As such, a remand is necessary for an addendum nexus opinion, to determine if the Veteran's claimed in-service incident is etiologically/ causally related to the Veteran's diagnosed hearing loss.

The VA's statutory duty to assist the Veteran includes the duty to conduct a thorough and contemporaneous examination so that the evaluation of the claimed disability will be a fully informed one. Green v. Derwinski, 1 Vet. App. 121, 124 (1991); see also Snuffer v. Gober, 10 Vet. App. 400 (1997). Assistance by VA includes providing a medical examination or obtaining a medical opinion when such an examination or opinion is necessary to make a decision on a claim. 38 U.S.C.A. § 5103A(d); 38 C.F.R. § 3.159(c)(4). When the medical evidence is inadequate, as it is here, VA must supplement the record by seeking an advisory opinion or ordering another medical examination. Colvin v. Derwinski, 1 Vet. App. 171 (1991) and Hatlestad v. Derwinski, 3 Vet. App. 213 (1992). While the Board does note that the Veteran's STRs are silent of any incidents where the Veteran reported trouble hearing, to include the Veteran's separation examinations, the Board nonetheless finds that the Veteran is competent and credible in reporting his in-service acoustic trauma and noise exposure. Therefore, as the Board finds that the previously afforded VA examination to be inadequate, an addendum must be obtained, so the VA may fulfill its duty to the Veteran

Service Connection - Back Condition 

The Veteran has asserted that his currently diagnosed back condition is related to an injury he sustained during an active training exercise at Fort McClellan in 1993. See Statement in Support of Claim, date October 26, 2009. Specifically, the Veteran claims that during an active exercise, he fell off a tank and injured his back. 

The Veteran was afforded an examination for his back in July 2015, to assess the nature and etiology of his claimed back condition. The examiner, after an in-person examination, diagnosed the Veteran with a lumbar strain. However, after noting that the Veteran's back pain did not start until 2013, the examiner concluded that the Veteran's current back strain was less likely than not etiologically related to his military service. As part of the examiner's rationale, it was noted that the Veteran's service treatment record did note lower back pain in 2001, however, there was no further evidence that the Veteran's current condition was related to any instance of his military service. 

The Board finds that the opinion provided by the July 2015 examiner to be inadequate, as it fails to consider/provide rationale for the Veteran's claimed injury in service. Specifically, the Veteran has continuously claimed that he hurt his back during service after falling off a tank during training at Fort McClellan, sometime in 1993. However, the examination report noted that the Veteran's back problems started in 2013, and that there was only one notation in 2001 about his back condition. 

The Board finds that the Veteran to be competent and credible as a lay person to attest to circumstances of injuring his back during service. He has consistently reported such events, and he is certainly competent to attest to the fact that he injured his back, albeit he is not competent to speak to the specific type of injury, but the fact of such injury occurred is sufficient to require consideration and opinion regarding why such incident is not related to his current condition. Such was not provided by the July 2015 examiner's nexus opinion; consequently, the Board finds such opinion to be inadequate for consideration on the merits, as, again, the negative nexus is drawn on an incomplete factual basis. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295. As such, an addendum opinion must be obtained prior to any appellate review or adjudication on this claim. 

Service Connection - Sinusitis

In July 2015, the Veteran was also afforded an examination regarding his claimed sinusitis. During the examination the VA examiner did not diagnose the Veteran with any symptoms of sinusitis, however, did diagnose him with allergic rhinitis, and symptoms thereof. As there was no diagnosis for sinusitis, the examiner ultimately provided a negative nexus for the condition. However, the Board finds this analysis to be incomplete in light of the VA's duty to the Veteran to provide every possible consideration for their claim. Here, the Board has construed the claim of service connection for sinusitis in accordance with Clemons v. Shinseki, 23 Vet.App. 1 (2009) (observing that when determining the scope of a claim, the Board must consider the claimant's description of the claim; the symptoms the claimant describes; and the information the claimant submits or that the Secretary obtains in support of that claim). As such, the VA must consider all related respiratory ailments/disabilities as part of the Veteran's claim, to include allergic rhinitis, even though the Veteran exclusively claimed sinusitis as part of his original claim. Consequently, as the July 2015 examiner failed to provide any nexus opinion regarding the Veteran's diagnosed allergic rhinitis, such examiner is incomplete and a remand must be provided to obtain an addendum opinion regarding the etiology of the Veteran's diagnosed/related condition. 

Accordingly, the case is REMANDED for the following action:

1. The RO will ascertain if the Veteran has received any VA, non-VA, or other medical treatment for his claimed conditions that is not evidenced by the current record. The Veteran should be provided with the necessary authorizations for the release of any treatment records not currently on file. The RO should then obtain these records and associate them with the claims folder. The Veteran may also submit any evidence or further argument relative to the claims at issue.

2. Review the obtained records to determine if they identify any additional pertinent treatment providers who may have relevant records not presently associated with the claims file. Following the receipt of any necessary authorizations from the Veteran, attempt to obtain all identified medical records. All reasonable attempts to obtain such records should be made and documented.

3. After the above has been completed, the RO should obtain an addendum VA medical opinion, from the same VA examiners that provided the July 2015 medical examinations of record. If that examiner is not available, the RO should obtain the opinion from other appropriate examiners. 

a. With regards to the Veteran's claim for hearing loss, the examiner should be asked to determine if the Veteran's bilateral hearing loss is related to any incident of service, or was caused /aggravated (permanently worsened beyond normal progression) by his military service.

b. The examiner should be provided with the Veteran's claims file in conjunction with the examination, and should indicate in the report that the claims file was reviewed. 

c. The examiner is specifically asked to address whether the Veteran's claimed in-service incidents of a close proximity explosion and exposure to loud rifle fire, could result in or aggravate the Veteran's current hearing loss. 

Regarding the basis for that opinion, please comment on the likelihood that the loud noises experienced during service noted herein resulted in damage to auditory hair cells even though findings may or may not suggest a recovered temporary threshold shift (TTS) in service. If you find auditory hair cell damage to be a likely result of the military noise exposure, please comment on the likelihood that such damaged hair cells would result in a greater permanent hearing loss than otherwise would be manifest. 

Additionally, the Board would appreciate the examiner to specifically comment on the impact, if any, of the line of research conducted by Dr. Sharon G. Kujawa, including the below:

"Acceleration of Age-Related Hearing loss by Early Noise Exposure: Evidence of a Misspent Youth" by S. Kujawa, M.D., and M. C. Liberman (2006). - J Neurosci. 2006 Feb 15; 26(7): 2115-2123. 

Kujawa SG, Liberman MC (2009) Adding insult to injury: cochlear nerve degeneration after "temporary" noise-induced hearing loss. J Neurosci. 2009 Nov 11;29(45):14077-85. 

Lin HW, Furman AC, Kujawa SG and Liberman MC (2011) Primary neural degeneration in the guinea pig cochlea after reversible noise-induced threshold shift. JARO 12:605-616.

Furman AC, Kujawa SG, Libermann MC (2013) Noise-induced cochlear neuropathy is selective for fibers with low spontaneous rates. J. Neurophysiol.110, 577-586.

d. All testing deemed necessary should be performed. 

e. The examiner must review all medical evidence associated with the claims file. However, the examiner should be advised that Board finds the Veteran credible and thus his history should be accepted as such, absent a compelling reason otherwise. 

f. A complete rationale for any opinion expressed should be included in the examination report. 

4. With regards to the Veteran's claim for a back condition, the RO should obtain an addendum opinion from the same examiner that provided the July 2015 examination for the Veteran's back. Again, if the same examiner is not available, the RO should provide the claims file to another suitably qualified examiner to provide such opinion. The examiner is asked to provide an opinion regarding the nature and etiology of the Veteran's back condition, to include a diagnosis, specifically to opine as to whether it is as likely as not, the Veteran's current condition was caused/related to, or aggravated, by any incident or injury of his military service. 

a. The examiner is specifically asked to address whether the Veteran's claimed in-service incident of falling off a tank, could result in or aggravate the Veteran's current back condition. The examiner is to be advised that Board finds the Veteran credible and thus his history should be accepted as such, absent a compelling reason otherwise. 

b. All testing deemed necessary should be performed. 

c. A complete rationale for any opinion expressed should be included in the examination report. 

5. Finally, with regards to the Veteran's claim for sinusitis, the RO should obtain an addendum opinion regarding the nature and etiology for any diagnosed respiratory condition, to include his previously diagnosed allergic rhinitis, specifically to opine as to whether it is as likely as not, the Veteran's current condition was caused / related to, or aggravated by, any incident or injury of his military service. 

a. All testing deemed necessary should be performed, and a complete rationale for any opinion expressed should be included in the examination report. 

6. The RO/AOJ should review the reports prepared by examiners, and if any examiner determines that he/she cannot provide an opinion on any issue at hand without resorting to speculation, the examiner should be asked to explain the inability to provide an opinion, identifying precisely what facts could not be determined. In particular, he/she should comment on whether an opinion could not be rendered because the limits of medical knowledge have been exhausted regarding the etiology or nature of any diagnosed disorder or whether additional testing or information could be obtained that would lead to a conclusive opinion. See Jones v. Shinseki, 23 Vet. App. 382, 389 (2010). (The AOJ should ensure that any additional evidentiary development suggested by the examiner should be undertaken so that definite findings can be obtained.)

7. After obtaining the examination(s) and associating it with the claims file, the RO/AMC should readjudicate the Veteran's claims. If the determination of the claims remain unfavorable to the Veteran, he and his representative should be furnished with a Supplemental Statement of the Case and be afforded a reasonable period of time in which to respond before the case is returned to the Board.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
BRADLEY W. HENNINGS
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs